IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 10-cv-762-WDM-MJW

SBM SITE SERVICES, LLC,

    Plaintiff,

v.

BILL SEVERIN

    Defendant.

## ORDER

Miller, J.

    This case comes before me on Defendant Bill Severin's Motion to Dismiss, or in the alternative, Compel Arbitration and Stay Proceedings (ECF No. 7) SBM Site Services, LLC's Complaint (ECF No. 1). Having reviewed the motion and briefs, I conclude that oral argument would not materially aid in my decision making. For the reasons that follow, the motion shall be denied.

### BACKGROUND

    SBM Site Services, LLC ("SBM") is an Oregon limited liability company in the business of providing janitorial, clean room and laboratory sanitizing, general building maintenance, recycling and environmental awareness programs, in-facilities move and move planning programs, and vendor management. Compl. ¶ 8, ECF No. 1. Bill Severin ("Severin") was employed by SBM from approximately March 2000 until February 2010. He held a number of management positions, most recently, National Account Manager. *Id.* at ¶ 9. One of his duties was to "ensur[e] that SBM's estimates

of materials, equipment, personnel costs and delivery schedules were accurate, complete and in compliance with SBM's contracts and policies." *Id.* at ¶ 9. Severin's job also included management of site managers, training, developing, coaching and mentoring Site Managers, providing monthly guidance concerning forecasting, budgeting, and quarterly business reviews. *Id.*

As part of the hiring process, Severin executed an Arbitration Agreement, which provides:

> You and SBM Cleaning Company[1] agree that any claim by you of unlawful harassment or discrimination allegedly occurring in the course of your employment with SBM CLEANING COMPANY which cannot be resolved by SBM CLEANING COMPANY's internal processes and/or with the administrative assistance of the California Department of Fair Employment and Housing ("DHEH") or the Equal Employment Opportunity Commission ("EEOC") will be submitted to final and binding arbitration and to any other forum. . . .
>
> . . . .
>
> If your employment is terminated and you believe the termination was wrongful and/or violated any of your rights, you and the Company agree to submit any dispute arising out of the termination of your employment (including, but not limited to, claims of unlawful harassment or discrimination based on race, sex, age, notational origin, disability or any other basis prohibited by applicable laws) exclusively to binding arbitration before a neutral arbitrator. . . .
>
> You and the Company agree that this arbitration shall be the exclusive means of resolving any dispute(s) arising out of the termination of your employment and/or any claim(s) of unlawful harassment or discrimination allegedly occurring in the course of your employment which are not resolved though internal

---

[1] SBM Site Services, LLC began as a company called "SBM Cleaning Company". *See* Decl. of Paul Emperador, Ex.1 to Resp. to Mot. to Dismiss at ¶ 6, ECF No. 8-1.

> processes or the DFEH or EEOC and that no other action will be brought by you in any court or other forum.
>
> THIS AGREEMENT IS A WAIVER OF ALL RIGHTS TO A CIVIL COURT ACTION FOR A DISPUTED TERMINATION AND/OR A CLAIM FOR UNLAWFUL HARASSMENT OR DISCRIMINATION ALLEGEDLY OCCURRING IN THE COURSE OF YOUR EMPLOYMENT; ONLY THE ARBITRATOR, NOT A JUDGE OR JURY, WILL DECIDE THE CLAIM OR DISPUTE.

March 13, 2000 Arbitration Agreement, Ex.C. to Resp. to Mot. Dismiss, ECF No. 8-1.

Also on March 13, 2000, Severin executed a Confidentiality Agreement, pursuant to which he agreed:

> to hold in confidence and to not disclose any Company business, including but not limited to: accounting records, employee records, customer lists and contracts, specialized training information, processes and operations, or any other business policy that is of a confidential nature to any customer, vendor, competitor, or other person or persons, without written consent of Charles Somers, President of Somers Building Maintenance, Inc.

Confidentiality Agreement, Ex. A. to Resp. to Mot. Dismiss, ECF No. 8-1. The Confidentiality Agreement also provides that SBM "reserves the right to take legal and/or equitable action to protect its proprietary and confidential information from disclosure. . . ." *Id.*

In 2008–2009, SBM was engaged in a one-year, renewable Services Agreement with Atmel Corporation ("Atmel") to provide custodial services for its Colorado Springs, Colorado clean room and office facilities. Compl. at ¶ 11, ECF No. 1. The work that SBM did for Atmel under the agreement generated approximately $960,000 in revenue. *Id.* at ¶ 12. At the end of 2009, SBM and Atmel were negotiating the renewal of the Services Agreement. *Id.* at ¶ 13.

3

At approximately the same time, Severin formed and registered a company named Rocky Mountain Building Services, Inc. with the Colorado Secretary of State, the purpose of which was to provide janitorial, general custodial, and building maintenance services to businesses in and around the State of Colorado.  *Id.* at ¶ 14.  SBM asserts that Severin and Matt Collusi (who was then an SBM employee) contacted Atmel to inform it that Severin was starting a competing business and told Atmel employees that Rocky Mountain Building Services could deliver the same services as SBM at a lower cost.  *Id.* at ¶ 15.  SBM alleges that, while trying to get Atmel's business, Severin disclosed confidential information to Atmel.  *Id.*  Ultimately, Severin or Rocky Mountain Building Services, Inc. bid on the Atmel contract.  *Id.* at ¶17.  Atmel did not renew the Services Agreement with SBM and awarded the contract to "SBM's competitor."  *Id.* at ¶ 18.

SBM terminated Severin's employment in February 2010.  *See* Compl. ¶ 9, ECF No. 1 and Mot. at ¶ 8, ECF No. 7.  It filed its complaint on April 1, 2010 raising claims against Severin for:  (1) Breach of Confidentiality Agreement; (2) Intentional Interference with Prospective Business Advantage; (3) Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Misappropriation of Trade Secrets (Uniform Trade Secrets Act); (5) Breach of Duty of Loyalty; (6) Fraud; and (7) Conversion.  Severin filed the Motion to Dismiss or, in the alternative, Compel Arbitration and Stay Proceedings (ECF No. 7) ("Motion") on June 4, 2010.

In the Motion, Severin argues that I lack subject matter jurisdiction because the Arbitration Agreement requires arbitration of disputes over employee termination.  Mot. at ¶ 1.  He states that SBM terminated him because he would not sign a non-

competition agreement to avoid a federal civil lawsuit. *Id.* at ¶7. He argues that this is the actual basis of the lawsuit. *Id.* at ¶¶ 7–8. Severin has not answered the Complaint, raised counterclaims, or pled affirmative defenses.

In response, SBM states that the Arbitration Agreement does not apply to the issues it has raised in the Complaint. It claims that the claims fall within the purview of the Confidentiality Agreement, which provides that SBM may take "legal and/or equitable action to protect its proprietary and confidential information from disclosure." Resp. Mot. Dismiss, ECF No. 8 and Confidentiality Agreement, Ex.A. to Resp. Mot. Dismiss, ECF No. 8-1. Specifically, it asserts that its claims of breach of contract, theft of information, and unfair competition against Severin are not subject to the Arbitration Agreement, which is limited to claims concerning unlawful harassment and discrimination during an employee's employment. *See* Resp. Mot. Dismiss, ECF No. 8.

## STANDARD OF REVIEW

Generally, Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction take two forms. A facial attack on the complaint's allegations as to subject-matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Where a party reaches beyond allegations contained in the complaint and challenges the facts upon which subject-matter jurisdiction depends, the district court may not presume the truthfulness of the complaint's factual allegations. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir.1995). A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the

5

pleadings does not convert the motion to a Rule 56 motion. *Id.* The burden is on the party who claims jurisdiction to demonstrate that the Court has subject-matter jurisdiction over the claims in the complaint. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir.2002).

Severin moves to dismiss SBM's claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), asserting that the claims for relief are subject to an arbitration clause. In the Motion, Severin refers to and quotes the Arbitration Agreement but did not attach the document to the Complaint (ECF No. 1) or file the document with the Motion. *See* Compl., ECF No. 1 and Mot. Dismiss at 4, ECF No. 7). In its response (ECF No. 8), SBM provided the Confidentiality Agreement (Exhibit A to Resp. Mot. Dismiss, ECF No. 8-1) and the Arbitration Agreement (Exhibit C to Resp. Mot. Dismiss, ECF No. 8-1). Severin does not object to the inclusion of either document and states that he unintentionally omitted the Arbitration Agreement from the Motion. Reply at Part II(A), ECF No. 11. To aid resolution of the disputed facts, I take the agreements into consideration without converting the motion to dismiss into a motion for summary judgment.

"Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction." *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992). Thus, SBM, "the party invoking federal jurisdiction in this case, must allege in its pleading the facts essential to show jurisdiction, and must support those facts by competent proof." *Id.* (internal quotations omitted). "If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the

evidence." *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

## DISCUSSION

A.  Judicial Notice

As a preliminary matter, I address Plaintiff's Request for Judicial Notice pursuant to Fed. R. Evid. 201 (ECF No. 8-2). Under Fed. R. Evid. 201, I must take judicial notice of facts "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). A fact is appropriate for judicial notice if it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "Facts contained in public records are appropriate subjects of judicial notice." *Metro Creditors' Trust v. Pricewaterhouse Coopers, LLP*, 463 F. Supp. 2d 1193 (E.D. Wash. 2006).

SBM requests that I take judicial notice of the Certification, Rocky Mountain Building Services, Inc. ("Certificate of Good Standing"), executed by the Colorado Secretary of State (Confirmation No. 7496700) and the Articles of Incorporation of Rocky Mountain Business Services, Inc. filed with the Colorado Secretary of State as Document Number 20091584566. *See* Exhibit B to Decl. of Paul Emperador, ECF No. 8-1. These documents are public records and are appropriate subjects of judicial notice. Accordingly, having been supplied with the necessary information, I take judicial notice of the Certificate of Good Standing for Rocky Mountain Building Services, Inc. and the Articles of Incorporation of Rocky Mountain Building Services, Inc.

B.  Arbitration Agreement

Under well-settled principles of contract interpretation, "[t]he words of the contract

should be given their plain meaning according to common usage, and strained constructions should be avoided. . . . Further, the meaning of a contract must be determined by examination of the entire instrument, and not by viewing clauses or phrases in isolation." *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002) (internal citations omitted).

Before enforcing an arbitration agreement, I must ascertain whether SBM's claims fall within the scope of the Arbitration Agreement. *See Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1195 (10th Cir. 2009). In construing the scope of an arbitration agreement, I must "classify the particular clause as either broad or narrow." *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir.2005). The distinction furthers freedom of contract so that parties are not "required to submit to arbitration any dispute which [they have] not agreed so to submit." *Chelsea Family Pharmacy, PLLC*, 567 F.3d at 1196 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)); *see also*, *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The breadth of an arbitration clause is determined by considering whether the parties clearly manifested an intent to narrowly limit arbitration to specific issues. *Chelsea Family Pharmacy, PLLC*, 567 F.3d at 1196 (citing *Cummings*, 404 F.3d at 1262) (holding that arbitration clause governing "'acts to terminate this agreement. . . (but not others)" was narrow and distinguishable from the type of broad provision that "refers all dispute[s] arising out of a contract to arbitration." *Id.* at 1260, 1262) (internal citations omitted)).

Where an arbitration clause is broad, doubts concerning the scope of arbitrable

8

issues are generally resolved in favor of arbitration. *See Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005). Where an arbitration clause is narrow, however, "the policy in favor of arbitration does not have 'strong effect . . . that it would have if we were construing a broad arbitration clause." *Id.* "Under a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview." *Id.* (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001); *Twin City Monorail, Inc. v. Robbins & Myers, Inc.*, 728 F.2d 1069, 1073 (8th Cir.1984)); *see also*, *Austin v. U.S. West, Inc.*, 926 P.2d 181, 183 (Colo. 1996) (To determine if an arbitration clause encompasses a dispute, the Court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause.).

Rather than referring all disputes between SBM and its employees to arbitration, the SBM Arbitration Agreement limits arbitration to only three types of claims—unlawful harassment or discrimination in the course of employment (*see* Ex.C., ¶ 1 to Decl. of Paul Emperador to Resp. to Mot. Dismiss, ECF No. 8-1), and wrongful termination. *Id.* at ¶ 3. I conclude that the agreement is narrow in scope. Accordingly, I consider whether the claims in the SBM's Complaint relate to an issue that is on its face within the purview of the Arbitration Agreement.

The Complaint does not raise claims based in unlawful harassment, discrimination or wrongful termination. *See* Compl., ECF No. 1. The factual allegations recount Severin's execution of the Confidentiality Agreement (*see* Compl. at ¶ 10, ECF No. 1), and the actions Severin allegedly took to breach that agreement and compete

9

unfairly with SBM.  *See* Compl. at ¶¶ 15, 16, & 17.  In the Motion, Severin states that "[a]ll seven [of SBM's] claims arise out of and are based on SBM's allegations Severin usurped a corporate opportunity of SBM and interfered with Atmel renewing a service contract."  *Id.* at ¶ 9.  It appears that the parties agree that the Complaint arises from the breach of the Confidentiality Agreement.  On its face, the Complaint does not raise issues that fall within the narrow scope of the Arbitration Agreement.

Nevertheless, Severin argues that this dispute actually arises out of the termination of his employment with SBM, and, therefore, the Arbitration Agreement applies and I do not have jurisdiction over the matter.  Mot. Dismiss ¶¶ 1 & 11, ECF No. 7; Reply at 3, ECF No. 11.  I disagree.  As stated above, neither of the parties has raised a claim based on wrongful termination.  To interpret SBM's contract and unfair competition claims as wrongful termination claims would give a strained construction to the words.

Based upon the plain language of the Arbitration Agreement and the Complaint, I determine that the factual allegations underlying the claims are not within the scope of the Arbitration Agreement.  Consequently, the Arbitration Agreement does not prevent me from exercising subject matter jurisdiction over this matter.  Accordingly, I shall deny Severin's motion to dismiss and his motion to compel arbitration.

It is ORDERED:

Defendant Bill Severin's Motion to Dismiss, or in the alternative, Compel Arbitration and Stay Proceedings (ECF No. 7) is denied.

DATED at Denver, Colorado on October 20, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge